UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TROY G. HAGGINS,

              Plaintiff,              **DECISION AND ORDER**

   v.

                                     1:19-CV-00639 EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Troy G. Haggins ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 12), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted and Plaintiff's motion (Dkt. 10) is denied.

## **BACKGROUND**

Plaintiff protectively filed his application for SSI on September 16, 2015. (Dkt. 6 at 74).[1] In his application, Plaintiff alleged disability beginning September 16, 2014, due to the following impairments: chronic back and knee pain; inability to stand or walk for long periods of time; numbness and tingling in legs and wrists; previously broken legs, pelvis, ribs, and hip; carpal tunnel syndrome; and depression. (*Id.* at 75-76). Plaintiff's application was initially denied on December 17, 2015. (*Id.* at 83-87). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Lisa B. Martin, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from the National Hearing Center, Falls Church, Virginia. (*Id.* at 35-73). On June 13, 2018, the ALJ issued an unfavorable decision. (*Id.* at 15-34). Plaintiff requested Appeals Council review; his request was denied March 21, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## **LEGAL STANDARD**

### **I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since September 16, 2015, the application date. (Dkt. 6 at 20).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical/thoracic spine disorder; lumbar spine disorder; knee disorder; left hip disorder; left ankle disorder; hand disorder; depressive disorder; and anxiety disorder. (*Id.* at 21). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, impacted cerumen in both ears, decreased hearing on the left, marijuana abuse, and vision and hearing problems were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 21-23). The ALJ particularly considered the criteria of Listings 1.02, 1.04, 12.04, and 12.06 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that:

> [Plaintiff] is precluded from all climbing of ladders, ropes, or scaffolds, is limited to occasional postural motions otherwise, and is limited to frequent, but not constant, upper extremity reaching, handling, fingering tasks. He must not be exposed to any dangerous work hazards (unprotected heights and exposed moving machinery). [Plaintiff] is limited to routine, simple tasks not involving a fast assembly quota pace, and not requiring more than occasional work interactions with coworkers, supervisors, and public. He needs a work setting that will tolerate up to 3% off task behavior during the workday due to symptom distractions.

(*Id.* at 24). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk and garment sorter. (*Id.* at 30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ erred in weighing the medical opinions of record and in assessing Plaintiff's credibility. (*See* Dkt. 10-1). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A. RFC Finding

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

#### 1. Dr. John Schwab's Opinion

Plaintiff argues it was error for the ALJ to assign Dr. Schwab's opinion significant

- 6 -

weight because "Dr. Schwab did not have any imaging to rely on when coming to his opinion." (Dkt. 10-1 at 10). Plaintiff specifically cites a lumbar spine x-ray dated September 27, 2015, showing decreased bone density and vertebral body height at L4 and L5 levels. (*Id.*). According to Plaintiff, "[a]bsent other opinions interpreting the results of an MRI, the Commissioner's reliance upon a consultative examiner who lacked imaging studies creates an 'obvious gap' in the record that requires remand." (*Id.*). The Court disagrees.

Although the regulations require the SSA to provide the consultative examiner "any necessary background information" about the claimant's condition, 20 C.F.R. § 416.917, "this language does not amount to a requirement that every consulting physician be provided with all of a claimant's medical records and history (much less a requirement that the physician *report* that []he viewed every, or any, document in the record)." *Johnson v. Colvin*, No. 13-CV-3745 (KAM), 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015), *aff'd sub nom. Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580 (2d Cir. 2016). Moreover, the Second Circuit has expressly held that an ALJ may assign great weight to the opinion of a consultative physician who did not review a plaintiff's prior imaging so long as the physician "personally examined the plaintiff and reached conclusions consistent with the objective medical evidence." *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017).

In this case, Dr. Schwab conducted a physical examination of Plaintiff's musculoskeletal system, noting:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in

> thoracic flexion, left 20 degrees, right 20 degrees; and rotation, right 20 degrees, left 20 degrees.  SLR negative bilaterally.  Full ROM of shoulders, elbows, forearms, and wrists bilaterally.  Full ROM of hips, knees, and ankles bilaterally.  No evident subluxations, contractures, ankylosis, or thickening.  Joints stable and nontender.  No redness, heat, swelling, or effusion.

(Dkt. 6 at 269).  Dr. Schwab ultimately concluded that Plaintiff was mildly limited in bending, lifting, and carrying heavy objects.  (*Id.* at 270).

Although it is unclear whether Dr. Schwab reviewed the September 27, 2015, lumbar spine x-ray, Dr. Schwab's opinion was consistent with the x-ray, which the ALJ described as "unremarkable" in her written determination (*id.* at 26).  Reviewing the September 27, 2015, x-ray, Dr. Vivian C. Tan noted decreased bone density and decreased vertebral body height at L4 and L5 levels.  (*Id.* at 264).  Dr. Tan also noted that the x-ray revealed: no acute fracture or subluxation; preserved intervertebral disc spaces; intact pars interarticularis; not widened sacroiliac joints; and unremarkable paravertebral soft tissues.  (*Id.*).  Dr. Tan ultimately concluded that there was no evidence of acute osseous abnormality.  (*Id.*).  Accordingly, the ALJ's conclusion that the x-ray indicated unremarkable findings consistent with the opinion of Dr. Schwab was supported by substantial evidence.

Dr. Schwab's opinion was also consistent with the other medical evidence of record.  For example, Dr. Erika C. St. James reviewed x-rays of Plaintiff's lumbar spine and concluded the x-rays were unremarkable, discharged Plaintiff with medication, and noted that there were "no neurological red flags."  (*Id.* at 262).  Despite noting muscular lumbar tenderness to palpation bilaterally, Dr. St. James observed no CVA tenderness, no vertebral tenderness, and normal inspection of Plaintiff's back.  (*Id.*).  These observations were also

consistent with the objective medical evidence of record, which consistently noted normal inspection of Plaintiff's musculoskeletal system. (*See*, *e.g.*, *id.* at 326 (Dr. Johanna C. Innes examined Plaintiff's musculoskeletal system and noted "no swelling, tenderness, instability, deformity, [and] normal range of motion"), 329 (Dr. Henry M. Bacher examined Plaintiff's back and noted no tenderness and normal inspection), 334 (Dr. Kristine M. Horton noted diffuse chronic discomfort to palpation but concluded normal inspection of Plaintiff's back), 343 (Dr. Christian R. Defazio noted no vertebral tenderness and normal inspection of back), 373 (Dr. James noted: normal gait and station; normal spine flexion and extension, but rotation slightly limited due to pain; normal stability; normal muscle strength and tone); 376 (Maureen Finney, PA-C noted: normal gait and station; normal digits and nails without clubbing and cyanosis; and normal inspection/palpation of joints, bones, and muscles)).

In light of the above evidence, it is clear that Dr. Schwab's opinion was consistent with the medical evidence of record and, thus, the fact that Dr. Schwab may not have reviewed the unremarkable September 27, 2015, x-ray is not error requiring remand. *See Wright*, 687 F. App'x at 48 (not reversible error for ALJ to rely on consultative examiner's opinion where examiner did not review the plaintiff's MRI because the examiner had personally examined plaintiff and reached conclusions consistent with the medical evidence in the record); *Amos v. Comm'r of Soc. Sec.*, No. 1:18-CV-1367 (WBC), 2020 WL 1493888, at *4 (W.D.N.Y. Mar. 27, 2020) (not error for ALJ to rely on consultative examiner's opinion where examiner did not review the plaintiff's MRI where "[p]hysicians, who did have access to the MRI, consistently reported normal findings on

examination and did not provide any functional limitations in their reports and because the ALJ formulated the physical RFC based on the record as a whole").

Plaintiff next argues that it was error for the ALJ to rely on Dr. Schwab's opinion because it was vague, citing *Curry v. Apfel*, 209 F.3d 117, 123-24 (2d Cir. 2000). (Dkt. 10-1 at 9 (arguing that an ALJ cannot rely on a "vague medical opinion indicating 'moderate' limitations" to assess "highly specific limitation[s] such as occasional stooping, crouching, crawling, and kneeling")). However, as previously discussed by this Court in *Filer v. Comm'r of Soc. Sec.*, "courts have routinely held that *Curry* does not stand for the broad proposition that a medical source opinion which uses terms like 'mild' or 'moderate' is always too vague to constitute substantial evidence—where the examiner conducts a thorough examination and explains the basis for the opinion." 435 F. Supp. 3d 517, 524 (W.D.N.Y. 2020) (internal quotation marks and citations omitted). Dr. Schwab's thorough examination of Plaintiff, as evidenced by his detailed findings, provided a sufficient basis for his opinion. Consequently, Dr. Schwab's opinion provided substantial evidence for the ALJ's conclusions. *See Bona v. Comm'r of Soc. Sec.*, No. 1:15-CV-00658 EAW, 2016 WL 4017336, at *11 (W.D.N.Y. July 22, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." (quotation omitted)).

The Court is also not persuaded by Plaintiff's argument that Dr. Schwab's opinion could not support the ALJ's physical RFC finding, which ultimately included additional limitations beyond those identified by Dr. Schwab. (Dkt. 10-1 at 9-10). It appears that the ALJ credited Plaintiff's testimony and assessed more generous limitations in her physical

RFC finding. For example, the ALJ limited Plaintiff to frequent, but not constant, upper extremity reaching (Dkt. 6 at 24) based on Plaintiff's testimony that he felt "a little stress, a little pain" when reaching his arms over his head (*id.* at 64). Moreover, the ALJ limited Plaintiff to frequent, but not constant, fingering tasks (*id.* at 24), consistent with Plaintiff's testimony that he was "able to use [his] fingers pretty decently" (*id.* at 66). The fact that the ALJ afforded Plaintiff the benefit of the doubt and included additional limitations in her physical RFC finding is not grounds for remand. *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."); *Castle v. Colvin*, No. 1:15-cv-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand." (citations omitted)). Accordingly, neither reversal or nor remand is warranted based on the ALJ's assessment of and reliance on Dr. Schwab's opinion.

### 2. Dr. Stephen Farmer's Opinion

In assessing Plaintiff's mental RFC, the ALJ gave significant weight to psychological consultative examiner Dr. Farmer's opinion. (Dkt. 6 at 28). Plaintiff argues that because the ALJ found that Dr. Farmer had understated Plaintiff's impairments, the ALJ could not rely upon the opinion to assess specific limitations. (Dkt. 10-1 at 11). The Court disagrees.

Dr. Farmer completed a psychiatric examination of Plaintiff on March 14, 2018, and

opined that there was:

> No evidence of limitation in understanding, remembering, or applying simple directions and instructions. No evidence of limitation in understanding, remembering, or applying complex directions and instructions. No evidence of limitation to use reason and judgment to make work-related decisions. Evidence of mild limitation interacting adequately with supervisors, co-workers, and the public. No evidence of limitation with sustaining concentration and performing a task at a consistent pace. No evidence of limitation with sustaining an ordinary routine and regular attendance at work. Evidence of mild limitation with regulating emotion, controlling behavior, and maintaining well-being. No evidence of limitation in maintaining personal hygiene and appropriate attire. No evidence of limitation of awareness of normal hazards and taking appropriate precautions. Difficulties are caused by lack of motivation.

(Dkt. 6 at 391). The ALJ gave Dr. Farmer's opinion "significant weight" because Dr. Farmer had performed "an in-person examination, and the opinion was supported by and consistent with the clinical observations such as ability to perform simple tasks on exam." (*Id.* at 28).

Relying on Dr. Farmer's opinion, the ALJ limited Plaintiff to work not requiring more than occasional work interactions with coworkers, supervisors, and the public. (*Id.* at 24). However, The ALJ disagreed with Dr. Farmer's opinion that Plaintiff had mild limitations in social functioning, noting instead that "[Plaintiff's] presentation of irritability on exam along with the overall record is more consistent with moderate limitations in social functioning." (*Id.* at 28). Moreover, the ALJ assessed limitations beyond those identified by Dr. Farmer, limiting Plaintiff to simple routine tasks and 3% time off-task due to Plaintiff's "lack of motivation and reported symptoms." (*Id.*).

Plaintiff essentially argues that because the ALJ assessed limitations beyond those identified by Dr. Farmer, the ALJ had necessarily found that Dr. Farmer understated

Plaintiff's impairments and, thus, the opinion could not constitute substantial evidence in support of the ALJ's mental RFC finding. (Dkt. 10-1 at 11).  It is within the ALJ's discretion to resolve genuine conflicts in the evidence.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  In doing so, "an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record."  *Houck v. Comm'r of Soc. Sec.*, No. 17-CV-1196(MAT), 2018 WL 6137123, at *2 (W.D.N.Y. Nov. 24, 2018) (citing *Veino*, 312 F.3d at 588); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (consultative examiner's opinion largely supported the ALJ's RFC determination even if ALJ did not credit all of consultative examiner's findings).  Accordingly, to the extent that Dr. Farmer's opinion conflicted with the medical evidence of record, the ALJ was free to reject portions of Dr. Farmer's opinion and to assess additional limitations beyond those identified by Dr. Farmer.  Moreover, as noted above, it is not reversible error for an ALJ to afford a claimant the benefit of the doubt and assess additional limitations based on the claimant's subjective complaints.

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case.  In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians.  As such, the RFC assessment in this case is consistent with the record and is supported by substantial evidence.  Accordingly, neither reversal nor remand is warranted.

## B. <u>Credibility</u>

Plaintiff's final argument is that the ALJ improperly assessed Plaintiff's credibility. (Dkt. 10-1 at 11-12). The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 42171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.*

Here, the ALJ engaged in the two-step inquiry. (*See* Dkt. 6 at 24-29 (explaining two-step inquiry)). Specifically, the ALJ discussed Plaintiff's testimony regarding his impairments and concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to produce some of the above alleged symptoms,

"[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id.* at 24-25). The ALJ concluded that "[a]ccordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.* at 25).

Plaintiff argues it was error for the ALJ to cite "Plaintiff's volunteer work and attempts to do odd jobs for money to discount Plaintiff's subjective complaints." (Dkt. 10-1 at 12). Plaintiff argues that this evidence is insufficient to demonstrate that Plaintiff can perform work on a regular and continuing basis. (*Id.* at 13). However, "[t]he issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates [his] ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding [his] symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-cv-1795 (MAD/CFH), 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014).

The ALJ found that "[Plaintiff's] claims of debilitated functioning [were] not consistent with contemporaneous reports regarding actual functioning," noting that Plaintiff had attended church, participated in volunteer work, helped a friend move, performed odd jobs to earn money, and worked part time in a warehouse. (Dkt. 6 at 25). It was proper for the ALJ to consider Plaintiff's daily activities in this context. *See O'Dell v. Colvin*, No. 16 Civ. 368 (AJP), 2016 WL 6882861, at *21 (S.D.N.Y. Nov. 22, 2016) (ALJ properly discounted the plaintiff's credibility based on plaintiff's daily activities which included volunteering with the fire department); *Allen v. Astrue*, No. 11-CV-330,

2012 WL 951553, at *3 (N.D.N.Y. Mar. 20, 2012) (ALJ properly discounted the plaintiff's credibility based on plaintiff's testimony that he had performed odd jobs during the large gaps in his employment history). Accordingly, neither reversal nor remand on this basis is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   July 31, 2020
         Rochester, New York